UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
In re:                                                      :    Chapter 15
                                                            :
                                                            :    Case No. 21-_____ (___)
BANCO NACIONAL S.A.                                         :
                                                            :
              Debtor in a                                   :
              Foreign Proceeding.                           :
                                                            :
----------------------------------------------------------x

**DECLARATION OF REGINALDO BRANDT
IN SUPPORT OF CHAPTER 15 PETITION OF BANCO NACIONAL S.A.
FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING**

I, REGINALDO BRANDT, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am the duly appointed liquidator ("**Liquidator**") of the extra-judicial liquidation of Banco Nacional S.A. ("**Nacional**"), a Brazilian liquidation (the "**Brazilian Liquidation**") under the supervision of the Central Bank of Brazil ("**BACEN**"), pursuant to BACEN Presidential Acts No. 584/1996 and No. 1,059/2004 in accordance with Article 16 of Federal Law 6,024/1974 (the "**Brazilian Bank Liquidation Act**"). I am familiar with but not fluent in English and make this Declaration with the assistance of an interpreter fluent in English and Portuguese.

2. I respectfully submit this declaration (the "**Declaration**") in support of the Verified Petition for Recognition of Foreign Insolvency Proceeding seeking: (i) recognition of the Brazilian Liquidation pursuant to 11 U.S.C. § 1517(b)(1) as a foreign main proceeding; (ii) my appointment as the "foreign representative" of Nacional, as defined in 11 U.S.C. § 101(24); (iii) declaring BACEN as a "foreign court"; and (iv) certain additional relief pursuant to the United States Bankruptcy Code (the "**Bankruptcy Code**"), as described in detail below (the "**Petition**").

1

3. Before my appointment as the liquidator of Nacional, I worked for BACEN in different positions over the course of 35 years. I was also president of Maranhão State Bank and regional delegate of BACEN in Salvador, state of Bahia.

4. I reside in Brazil and I perform my duties as Liquidator of Nacional in and from Brazil, at Av. Almirante Barroso, 52, 2o. andar parte, Centro, Rio de Janeiro/RJ.

5. I am duly authorized to represent Nacional and act for its interests before any court or other authority, as stated by Article 16 of the Brazilian Bank Liquidation Act[1] and, therefore, duly authorized to make this declaration as the Liquidator of Nacional.

6. I am familiar with the facts of this matter and have participated in the Brazilian Liquidation since my appointment on 26 March 2004, pursuant to BACEN Presidential Act No. 1,059/2004. A true and correct copy of the 2004 excerpt from the BACEN Presidential Act No. 1,059/2004, announcing my appointment as the Liquidator, together with an English translation, is attached hereto as **Exhibit 1**.

7. I know of the Model Law of Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL), and approved by a resolution of the United Nations General Assembly on 15 December 1997. I also know that the Model Law has been adopted in the United States as chapter 15 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

8. Unless otherwise indicated, all statements contained herein are true to the best of my knowledge and based upon my personal knowledge of Nacional's operations and financial condition, my review of relevant documents, and from my conversations with relevant personnel,

---

[1] Brazilian Bank Liquidation Act law no 6,024.74:
Article 16. The extrajudicial liquidation will be executed by a liquidator designated by Brazilian Central Bank, with full administration and liquidation powers, especially those to verify and classify credits, to hire and dismiss employees, stipulating their earnings, to grant and revoke powers of attorney, propose lawsuits and represent the estate before any court or other authority.
 §1º After written authorization from Brazilian Central Bank may the liquidator, for the estate benefit, end pending business arrangements and, at any time, attach a lien or transfer its assets by public bidding process.

constant interaction with the BACEN committee that oversees the Brazilian Liquidation. I am over the age of 18 and, if called to testify, would testify competently about the facts set forth herein.

9. On 18 November 1995, as a result of a special audit on Nacional's activities, BACEN issued a decree (the "**Special Management Decree**") placing Nacional under temporary special management ("**Special Management**") for a period of 12 months. A true and correct copy of the Special Management Decree, together with an English translation, is attached to hereto as **Exhibit 2**.

10. On 13 November 1996, due to the fact that Nacional had uncovered liabilities, BACEN issued a new decree (the "**Liquidation Decree**"), converting the Special Management into a BACEN-supervised extra-judicial liquidation, which is referred to in this Declaration as the Brazilian Liquidation. The Liquidation Decree appointed José Emílio Passos Carvalho ("**Carvalho**") as liquidator. A true and correct copy of the Liquidation Decree, together with an English translation, is attached hereto as **Exhibit 3**.

11. Through multiple orders, Carvalho was replaced on 20 April 1998 by José Carlos Miguel, who was subsequently replaced by Abdiel Andriolo de Andrade on 15 June 2000.

12. As noted above, BACEN appointed me as the new Liquidator on 26 March 2004 and since then I have served in this capacity.

13. As mentioned above, as Liquidator of Nacional, I have powers under the Brazilian Bank Liquidation Act to retain United States counsel and commence ancillary proceedings in a foreign jurisdiction to seek the protection of Nacional's rights.[2]

14. For the reasons discussed below, I submit that: (i) I am the duly appointed "foreign representatives" of Nacional in the Brazilian Liquidation; (ii) BACEN is a "foreign court," and

---

[2] Article 16, Brazilian Bank Liquidation Act.

3

that the Brazilian Liquidation constitutes a "foreign proceeding" within the meaning of sections 101(24) and (23) of the Bankruptcy Code, respectively; (iii) this case was, to my knowledge, properly commenced, and, as informed by counsel, in accordance with the requirements of chapter 15 of the Bankruptcy Code; and (iv) pursuant to Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code the Brazilian Liquidation satisfies all the requirements to be recognized as a "foreign main proceeding."

I. **BACKGROUND**

    A. **Location, Operations, and Management of Nacional**

15. Nacional was founded in 1944 as Banco Nacional de Minas Gerais S.A.

16. At its peak of operations, Nacional served 1.2 million customers and was one of the top five largest private sector retail banks in Brazil.

17. Nacional had around 14,000 employees, 250 branches spread throughout 23 states in Brazil and offshore branches in Miami, New York and Nassau in the Bahamas. In addition, Nacional owned subsidiaries such as Interbanco S.A. ("**Interbanco**") in Paraguay and Banco Nacional Luxembourg S.A.

18. Nacional's registered office is located at Avenida Almirante Barroso No. 52, 2. Andar, Rio de Janeiro, RJ, Brazil.

19. Nacional had an aggressive lending scheme which sometimes caused it to be leveraged by a factor of ten times its market value and assets – almost triple that of its peers in Brazil.

20. This aggressive and unjustified lending strategy, combined with downturns in the Brazilian economy in the early 1990's, resulted in a portfolio broadly comprised of unsecured loans with no liquidity.

4

B.      **The Formation and Powers of BACEN**

21.     On 31 December 1964, pursuant to Law No. 4595, the Brazilian government established BACEN as the central bank of Brazil.  BACEN commenced operations in March 1965.

22.     As set forth at greater length of the Declaration of João Accioly, attorney of Nacional, submitted in support of the Petition, BACEN is the principal monetary authority of Brazil.

23.     BACEN's responsibilities include serving as the financial agent of the Brazilian government, supervising the financial system, issuing Brazilian Reals (Brazil's official currency), setting the Real's interest rate, and serving as the "bank of last resort" for other Brazilian financial institutions by issuing exclusive loans in order to regulate liquidity and avoid systemic risks to the Brazilian banking system.

24.     The non-discretionary powers to intervene decisively in the operations of financial institutions has ensured that BACEN plays a key role in efforts to rescue financial institutions.

25.     The institutional arrangements that provide for these discretionary powers are known as "Special Regimes," which include intervention, a mechanism for temporary special management - Regime de Administração Especial Temporária ("**RAET**"), and administrative or extrajudicial (out-of-court) liquidation.

26.     The RAET authorized BACEN to lend bailout money aiming the financial and economic recovery of the company and grant to BACEN the authority to appoint the managers of the financial institution under this special regime.

C.      **The Program of Incentives for Re-Structuring and Strengthening the National Financial System ("PROER")**

5

27.     In 1995, and in fact 2 weeks before Nacional went into Special Management, the Brazilian government established The Program of Incentives for Re-Structuring and Strengthening the National Financial System ("**PROER**").

28.     PROER (which in Portuguese stands for "Programa de Estímuloa à Reestrutuação do Sistema Financeiro Nacional") is a system set up by the Brazilian government to assist distressed private sector banks in preventing the disruption of services to customers of banks, especially those whose financial crisis may cause a domino effect.

29.     PROER significantly expanded the powers and responsibilities of BACEN.

30.     PROER provided a system of tax incentives and credit facilities to encourage rapid consolidation of the Brazilian financial market through a series of mergers and acquisitions.

31.     Under the PROER regime, a financially sound bank would take over all the deposit liabilities of an insolvent one and take those assets that it wished to take, such as credit portfolios with good ratings. PROER credits made up the remainder and were guaranteed using public bonds whose value exceeded the credit by twenty per cent.

D.     **Sale to Unibanco, Special Management, and the Brazilian Liquidation**

32.     Accordingly, in November 1995, Nacional Unibanco Holdings S.A. purchased part of the assets and liabilities of Nacional for approximately $4.5 billion.[3]

33.     The insolvent part of Nacional remained under the administration of the Liquidator and under supervision of BACEN.

34.     As noted above, on 18 November 1995, BACEN issued the Special Management Decree placing Nacional under Special Management for a period of 12 months.

---

[3] According to adjustment for inflation by applying index IPCA (IBGE) of the amount indicated in the financial-economic report of Unibanco and Unibanco Holdings made by Trevisan dated 27 August 2003.

35. On 20 November 1995, BACEN opened a line of credit to Nacional. Nacional requested BACEN Real 5.913 billion from this line of credit, but until 13 November 1996 only Real $15 million had been repaid, which contributed to BACEN's decision to decree Nacional's extra-judicial liquidation.

36. Also as noted above, on 13 November 1996, the Special Management was converted into the Brazil Liquidation and BACEN appointed me as the new Liquidator on 26 March 2004 and since then I have served in this capacity.

37. The residual insolvent assets of Nacional remained under the administration of the Liquidator and supervision of BACEN. Among my supervised duty is the duty to pursue damages from wrongdoers or negligent service providers. It is worth noting that the personal assets of the former managers and controlling shareholders of Nacional were made available by law, by effect of the RAET Decree, to satisfy any outstanding liabilities.[4]

E. **BACEN's Inquiry Report Concerning the Causes of Nacional's Insolvency**

38. BACEN began to audit Nacional after it detected a severe deterioration in the bank's financial condition, which included problems with liquidity, cash reserves and credibility.

---

[4] Article 36. The assets from administrators of financial institutions under intervention, under extra-judicial liquidation or bankruptcy, cannot be, by any means, directly or indirectly, transferred nor attached with any liens, until the assessment and final liquidation of their responsibilities.
  §1st This Article's asset freeze is a consequence of the act that decrees the intervention, either extra-judicial or bankruptcy, and affects everyone who has held functions in the twelve months prior to the mentioned act.
  §2nd As per the proposal of the Brazilian Central Bank duly approved by the National Monetary Council, the asset freeze restriction can be extended to:
  a) The assets of managers, members of the fiscal committee, and all those that, limited to the estimated responsibility of each one, have concurred, in the last twelve months, to the decree of the intervention or the extrajudicial liquidation.
  b) The assets of people who, in the last twelve months, by any means, have acquired from the institution administrators or from the people referred to in the item "a" above, provided that there are sufficient elements to believe the transfer was a simulation to avoid this Law effects.
  §3rd The assets that cannot be transferred nor seized according to current legislation are not included in this Article provisions.
  §4th The asset freeze restriction does not include either the assets object of a transfer agreement, promise of sale, cession of rights, provided that the respective documents have been registered before the competent Notary Office prior to the date the intervention decree, extra-judicial liquidation or bankruptcy, was issued.

39. I confirm that in accordance with the Brazilian Bank Liquidation Act, which deals with the intervention and extra-judicial liquidation of financial institutions such as Nacional, BACEN established an Inquiry Commission to ascertain the causes of the insolvency of Nacional and produced a report detailing its findings (the "**BACEN Report**").[5] A copy of the BACEN Report is attached hereto as **Exhibit 4**.

40. The BACEN Report concluded that Nacional had 652 fraudulently concealed toxic loan accounts with a net balance of Real $5.368 billion. None of these loan accounts had any collateral. The report found that the loans should have been recorded as losses of the bank. Instead, they were falsely recorded as being fully performing loans in the accounting records as their due dates were fraudulently extended by the bank in order to conceal their illicit nature. In addition, the BACEN Report found that the outstanding balances were inflated several times by the bank. The BACEN Report also found evidence of financial fraud, as well as mismanagement and breach of fiduciary duties by Nacional's controlling shareholders and former executives by misrepresenting to the market that the bank was sound when it clearly was not.

---

[5] Article 41. Upon intervention, extrajudicial liquidation, or bankruptcy of a financial institution, the Central Bank of Brazil will carry out an investigation in order to determine the causes that led the company to that situation and the responsibility of its managers and members of the Fiscal Council.
    §1st. For the purposes of this article, in case of bankruptcy, the Brazilian Central Bank shall be notified by the clerk of the proceeding within twenty-four hours of the bankruptcy decree.
    §2nd. The investigation shall start immediately after the intervention or extrajudicial liquidation order, or bankruptcy notice, and it shall be concluded within one hundred and twenty days, extendable, if extremely necessary, for the same period.
    §3rd. In the investigation proceeding, the Brazilian Central Bank may:
        a) Examine, whenever and as many times as it deems necessary, the accounting records, files, documents, values and other information from the institutions;
        b) Take depositions requesting, if necessary, police assistance;
        c) Request information from any public authority or office, the bankruptcy judge, the Public Prosecutor's Office, the trustee, the liquidator or the intervenor;
        d) Examine, by any designated person, the bankruptcy files and obtain, upon written request, copies or certificates of the files;
        e) Examine the accounting records and third party files the financial institution had business with, as well as the accounting and files of former managers, whether traders or industrialists, and the accounts held at other financial institutions.
    §4th. The former managers may access the investigation files, offer documents, and suggest measures to be taken.

**F.      The Investigation and Prosecution of the Executives and Shareholders of Nacional**

41.     Multiple law enforcement agencies have investigated and in some cases, indicted and convicted, Nacional's former shareholders and executives.

42.     First, in 1997, the Federal Police of Rio de Janeiro (the "**Federal Police**") indicted 39 individuals for fraud at Nacional. Based on the Federal Police investigation the Public Prosecutor's Office filed, on September 22, 1997, three different information proceedings: 96.0026382-5, 97.0061959-1 and 2000.5101525364-0. Some of the defendants were convicted in 2002 for mismanagement of a financial institution, conspiracy, providing false information to investors and forgery of accounting records.[6]

43.     In addition, the Federal Police separately investigated the bank and its financial books for more than two years and completed a report in December 2000 (the "**Federal Police Report**") showing substantial diversions to Nacional's subsidiary in Paraguay, Interbanco. On October 9, 2002, the Public Prosecutor's Office filed information against 22 former employees of Nacional.[7]

44.     The Federal Police Report concluded that $6 billion was illegally remitted to Interbanco between 1990 and 1995.

45.     To accomplish the scheme, Nacional raised funds from regular and institutional clients in Brazil and then unlawfully remitted the funds to Interbanco using bank accounts designated for non-residents.

---

[6] According to information available at files n. 0012110-682002.4.02.0000 (Resp 1301820/RJ) and 96.0026382-5 (RESP 1301820/RJ).
[7] According to information available at files n. 0012110-68.2002.4.02.0000 (resp 13011820/RJ).

46. The Federal Police Report ultimately determined that Interbanco was the intermediary through which the funds stolen from Nacional ended up in the offshore bank accounts of Nacional's shareholders and former executives.

47. According to information provided to me by attorneys hired by Nacional to conduct international asset tracing and recovery, some of the diverted funds may have been routed through financial institutions doing business in New York.

48. As a result of this investigation, the Federal Police indicted 22 former employees of Nacional and several former directors of Nacional and Interbanco. Six of these defendants were convicted and sentenced to serve between eight and 17 years in prison.

49. Multiple civil actions remain pending against Nacional and its former shareholders and executives.

### G. The Progress of the Brazilian Liquidation

50. Since the issuance of the Liquidation Decree and commencement of the extra-judicial Brazilian Liquidation, each Liquidator has taken ordinary measures to protect Nacional's assets, such as enforcing claims against loan book debtors, adjudicating claims against Nacional, and pursuing claims against third parties.

51. At present, Nacional has outstanding liabilities, i.e., the deficit on its balance sheet, of roughly 1 billion Reals.[8] It is important to note that this figure does not include contractual or legal interest, which applies on the total liabilities of Nacional's list of creditors. Such interest shall be calculated from the date of the Liquidation Decree. Nacional's total liabilities as of December 31, 2019, without said interest, are R$ 41.162.751.779,50.[9]

---

[8] According to the balance sheet as of December 31, 2019, available at www.bnsa.com.br.
[9] According to the list of creditors available at www.bnsa.com.br.

**II.      The Chapter 15 Petition Satisfies the Requirements of Chapter 15**

52.    I have been advised that in order to qualify for recognition under Chapter 15, Nacional's Chapter 15 Petition must meet certain requirements. In particular, the Chapter 15 Petition must be brought by a "foreign representative" in respect of a "foreign proceeding" that is pending before a "foreign court", all as defined in the Bankruptcy Code. The foreign debtor also must meet one of the bases for qualifying as a debtor under the Bankruptcy Code.

   **A.      The Liquidator is a "Foreign Representative" of Nacional**

53.    I am aware of the definition of "foreign representative" as referred to in section 101(24) of the Bankruptcy Code and believe that as extra-judicial liquidator of Nacional, I qualify as such.

54.    I was appointed by BACEN to carry out this role. As discussed above, BACEN is the Central Bank of Brazil that is solely charged with supervising the Brazilian banking system.

55.    In furtherance of my responsibilities as the Liquidator, I am charged with the administration and liquidation of the business and assets of Nacional, and acting on its behalf. In doing so, I am the primary point of contact for Nacional's myriad creditors. As one of many other examples, I am required to routinely submit updated financial statements of Nacional to BACEN.

56.    I am also authorized to bring or defend any action or legal proceeding in the name or on behalf of Nacional, for the benefit of its estate and creditors.

57.    As well as the previous liquidators, I have carried out numerous meetings with the former management and employees of Nacional in order to understand the Nacional structure and Nacional's day to day operations.

58.    As a result of these meetings and other investigations, I keep stored, on Nacional's behalf, extensive documentation in Brazil.

59. As such, I am the person responsible for representing Nacional in the Brazilian Liquidation and in all related matters, including this matter, as its "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

### B. BACEN Qualifies as a "Foreign Court" and the Brazilian Liquidation is a "Foreign Proceeding"

60. I also have been advised that a "foreign court" is defined in section 1502(3) of the Bankruptcy Code as "a judicial or other authority competent to control or supervise a foreign proceeding." I am advised by Brazilian counsel, Mr. João Accioly, and respectfully submit, that under the Brazilian Bank Liquidation Act and other Brazilian legislation, BACEN clearly qualifies as such an authority. Among other reasons, BACEN is "competent to control or supervise" this proceeding[10] because it has been the sole administrator of the Brazilian Liquidation for more than 20 years.

61. Also based on the legal orientation referred to in paragraph 60, I understand that a "foreign proceeding" is defined as a "collective judicial or administrative proceeding in a foreign country . . . Under a law related to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

---

[10] Law 6.024/1974
Article 1. Private and public non-federal institutions, as well as credit unions, are subject, under the terms of this Law, to extrajudicial liquidation or intervention, in both cases carried out and decreed by the Brazilian Central Bank, without prejudice to the provisions of Article 137 and 138 of Decree-Law No. 2,627, of September 26, 1940, or to bankruptcy, under the terms of current legislation.
Article 33. The liquidator shall account to the Brazilian Central Bank, regardless of any requirement, at the moment he leaves his duties, or at any time, when requested, and shall answer for civil and criminal liabilities derived from his acts.
Article 34. Extrajudicial liquidation shall be applied when and as applicable, provided it does not conflict with the provisions of this Law, the provisions of the Bankruptcy Law (Decree-Law No. 7,661 of June 21, 1945), equating the liquidator to the trustee, the Central Bank of Brazil to the bankruptcy judge. The judge who would be competent to preside over and judge the bankruptcy of the liquidating institution, shall be competent to take cognizance of the revocation action described in Article 55 of that Decree-Law.

62. The Brazilian Liquidation clearly qualifies as such, as it is a collective administrative proceeding pending in Brazil under a law relating to insolvency or adjustment of liabilities in which Nacional's assets and affairs are subject to the control and supervision of BACEN for the purpose of liquidation.

63. The Brazilian Liquidation is governed by the Brazilian Bank Liquidation Act, which covers amongst other matters insolvency of banks as in this case, and is by definition a liquidation proceeding governed by Brazilian laws under the supervision of BACEN for the benefit of all of Nacional's creditors, investors, and parties in interest.

    **C.**    **The Brazilian Liquidation is a "Foreign Main Proceeding"**

64. Finally, I am aware of the requirements for recognition as a foreign main and non-main proceeding under Section 1517(b)(1) and (2) of the Bankruptcy Code.

65. I believe that the Brazilian Liquidation qualifies as a foreign main proceeding and that Brazil is the center of main interests ("**COMI**") as this term is understood under the Bankruptcy Code. I further believe that Nacional engaged in non-transient economic activity in Brazil, and that Brazil was and is Nacional's nerve center and headquarters.

66. As noted above, Nacional was formed under the laws of Brazil and maintained its registered office in said country. I am currently administering the liquidation of Nacional from my office, at Nacional's headquarters in Brazil. I am advised by Mr. Accioly that under United States law, this fact supports a statutory presumption under the Bankruptcy Code that Brazil is Nacional's COMI.

67. As of the Liquidation Decree, Nacional maintained its headquarters in Rio de Janeiro and had 14,000 employees stationed at 335 branches throughout 23 Brazilian states.

13

68. Substantial Nacional assets – including the bulk of its known liquid assets – are located in Brazil.

69. Since 2004, I have taken steps to protect Nacional's assets by negotiating settlements with affiliates, adjudicating claims against Nacional, and investigating claims against third parties, all from my office in Brazil.

70. I have carried out numerous meetings with the former management and employees of Nacional representatives in order to understand the Nacional structure and Nacional's day to day operations. As a result of these meetings and other inquiries, extensive documentation has been received and is stored in Brazil.

71. As Liquidator, I have displaced the board of Nacional. Nacional is in Brazilian liquidation, and all creditors of Nacional may submit their claims in the Brazilian Liquidation, subject to certain rules and deadlines. Moreover, Nacional's remaining affairs are being conducted from Brazil, and have been since 1996.

72. I respectfully submit that Brazil is the COMI of Nacional and that there is no basis for rebutting the presumption that Brazil is the COMI of Nacional.

73. In accordance with 11 U.S.C. § 1515(c), I am aware of no other pending foreign insolvency proceedings except the Brazilian Liquidation in which Nacional is the subject of the proceeding.

74. In accordance with Bankruptcy Rule 1007-1, I am unaware of any pending actions in the United States in which Nacional is named as a party. I note that Nacional does not seek provisional relief against any party at this time. The disclosures required under Bankruptcy Rule 7007.1 are attached hereto as **Exhibit 5**.

75. For all of these reasons, I respectfully request that this Court enter an Order recognizing me as the duly authorized foreign representative of Nacional and naming the Brazilian Liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 07 October, 2020
Rio de Janeiro, Brasil

**REGINALDO BRANDT**
*Liquidator of Banco Nacional S.A.*

**João Accioly**
*Attorney at Law OAB/RJ 152.983*